Frederick Joe BRIGGS, Plaintiff,

v.

GENERAL MOTORS CORPORATION, et al., Defendants.

No. 5:90–CV–01.

United States District Court,
W.D. Michigan, S.D.

Dec. 19, 1990.

George Hamilton Foley, Paula J. Manderfield, Lansing, Mich., for plaintiff.

William R. Schulz, Foster, Swift, Collins & Smith, PC, Lansing, Mich., for defendants.

## OPINION

HILLMAN, Chief Judge.

This is a state tort action removed to this court pursuant to 28 U.S.C. §§ 1331 and 1441. Plaintiff Frederick Joe Briggs seeks damages from defendants General Motors Corp., BOC Group ("General Motors") and Michael Schuchaskie ("Schuchaskie") for assault and battery, intentional infliction of emotional distress, and intentional interference with a contractual relationship. The matter is before the court on defendants' motion for summary judgment. For the reasons stated below, the court grants summary judgment in part, and remands the remaining claims to state court.

## BACKGROUND

Briggs worked for General Motors in Lansing, Michigan, for about 18 years, until December 15, 1987. On that date, Briggs and Schuchaskie, who is a supervisor, engaged in a fight at work. Briggs was immediately placed on indefinite suspension, and on January 8, 1988, he was discharged.

Briggs alleges that the altercation was part of a deliberate and intentional campaign of harassment by General Motors and Schuchaskie because of Briggs's homosexuality.

Briggs seeks damages arising from three alleged counts of intentional tort: Count I for assault and battery, Count II for intentional infliction of emotional distress, and Count III for intentional interference with contractual relations.

Defendants removed the case from Ingham County Circuit Court under 28 U.S.C. §§ 1441 and 1446, claiming that it presents a federal question over which this court has original jurisdiction: whether federal labor law preempts Briggs's state tort claims due to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).

During his employment with General Motors, Briggs was a member of the UAW, which had a collective bargaining agreement. The agreement set forth grievance procedures concerning terminations from employment. Because of this agreement, defendants contend that federal labor law preempts much of Briggs's complaint.

In moving for summary judgment pursuant to Fed.R.Civ.P. 56(c), defendants claim that federal labor law applies to the interference with contract claim and the lost income portions of the other two claims. Defendants further assert they are entitled to judgment as a matter of law on the contract claim and lost income issues because they are time barred. With respect to the remainder of the assault and battery and intentional infliction of emotional distress claims, defendants contend they are entitled to judgment under the exclusivity of remedy provision of Michigan's workers' compensation law, M.C.L.A. § 418.131.

After defendants' motion for summary judgment was filed, the court granted plaintiff leave to file an amended complaint. After plaintiff filed the amended complaint, defendants renewed their motion for summary judgment. Plaintiff filed a response asserting that his claims are neither preempted by federal labor law nor time barred.

## DISCUSSION

*Preemption under the Labor Management Relations Act*

■ Under the "well-pleaded complaint" rule, a defense of preemption under a federal law ordinarily cannot confer federal court jurisdiction and justify removal from a state court. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 391–92, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 10–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983).

However, the preemptive force of some federal statutes is so strong that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). The Supreme Court has made clear that section 301 of the Labor Management Relations Act is a statute bearing this preemptive might with respect to claims based on collective bargaining agreements. *United Steelworkers of America v. Rawson,* — U.S. —, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990); *Metropolitan Life Ins. Co.,* 481 U.S. at 65, 107 S.Ct. at 1547.

■ When state actions substantially depend on analysis of a collective bargaining agreement, federal labor law supplants state law under section 301(a).[1] *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985); *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 450–51, 77 S.Ct. 912, 914–15, 1 L.Ed.2d 972 (1957). "[O]nly the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements." *Rawson,* — U.S. at —, 110 S.Ct. at 1909.

There are, however, limits to the preemptive reach of section 301. State-law claims that do not require interpretation of a labor contract avoid preemption, being independent of the contract. *Lingle v. Norge Div. of Magic Chef Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988); *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 799–800 (6th Cir.1990). "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883 (footnote omitted). Thus, only those claims that are "substantially dependent" on analysis of a collec-

---

1. Section 301(a) of the Labor Management Relations Act:

    Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
    29 U.S.C. § 185(a).

tive-bargaining agreement require application of federal law. *Allis–Chalmers Corp.*, 471 U.S. at 220, 105 S.Ct. at 1915–16.

Relying on this preemption principle, General Motors and Schuchaskie contend that federal labor law preempts the portions of Briggs's tort action that implicate the contractual arrangement between General Motors and the UAW, Briggs's union. Specifically, defendants assert that section 301 preempts Briggs's claim for interference with contractual relations as well as his claims for assault and battery and intentional infliction of emotional distress to the extent that they seek lost income.

*Intentional Interference with Contractual Relations*

■ The court finds that the intentional interference with contractual relations claim is preempted. To prevail on a claim for tortious interference with contractual relations under Michigan law, a plaintiff must show: 1) existence of a contract; 2) breach of a contract; and 3) instigation of the breach by the alleged tortfeasor without justification. *Jim–Bob, Inc. v. Mehling*, 178 Mich.App. 71, 443 N.W.2d 451, 462 (1989); *Northern Plumbing & Heating, Inc. v. Henderson Bros., Inc.*, 83 Mich.App. 84, 268 N.W.2d 296, 298 (1978).

To adjudicate Briggs's interference with contract claim, the factfinder must examine the collective bargaining agreement to determine the existence of two essential elements of this tort—existence and breach. This claim substantially depends on interpretation of the labor contract. As a result, federal labor law, rather than Michigan tort law, preemptively applies to Count III of Briggs's complaint. *Allis–Chalmers Corp.*, 471 U.S. at 220, 105 S.Ct. at 1915–16.

The need to examine the underlying contract to determine existence and breach of a contract under Michigan tort law distinguishes Briggs's claim from tortious interference claims that do not require an explicit breach of contract finding and avoid preemption as a result. *See Fox*, 914 F.2d at 800–801 (considering Ohio law); *Dough-*erty v. Parsec, Inc.*, 872 F.2d 766, 770 (6th Cir.1989) (considering same).

■ Applying federal law to Briggs's interference with contract claim, the court finds that it is time-barred. The Supreme Court has established that section 301 claims for breach of a collective bargaining agreement share the six-month limitations period established by section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983).

■ The period for bringing a section 301 claim generally begins to run when a claimant discovers or should have discovered the allegedly violative act. *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 581 (6th Cir.1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). In instances where a claimant has first attempted redress through grievance procedures, the limitations period begins to run when the claimant knows or should have known the final action with respect to the grievance. *Miller v. Jeep Corp.*, 774 F.2d 111, 113–14 (6th Cir.1985).

In this case, Briggs attempted to contest his firing through the collective bargaining agreement's union grievance process. After Briggs's union local refused to process the grievance, Briggs appealed to the International UAW. In late May 1989, Briggs received notification via a letter dated May 23, 1989, that the appeal of his termination through the grievance process had been denied. Briggs Deposition at pp. 159–60; Briggs Deposition Exhibit 5. Briggs acknowledges, "As far as I'm concerned this [the May 23, 1989, letter] said that the Union was through with it." Briggs Deposition at p. 158.

Briggs did not file his complaint until December 15, 1989, more than six months after learning of his union's final action with respect to his grievance. As a result, he failed to bring this claim within the well-settled six-month time limit for section 301 claims. *DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293; *Miller*, 774 F.2d at 113.

Therefore, defendants are entitled to judgment as a matter of law on the interference with contractual relations claim, and the court grants defendants' motion for summary judgment.[2]

*Assault and Battery, Intentional Infliction of Emotional Distress*

■ With regard to Briggs's claims for assault and battery and intentional infliction of emotional distress, the court finds that federal law does not preempt the state claims, despite Briggs's allegations of lost income.

Under the same well-settled preemption principles, Counts I and II of Briggs's complaint are independent of the collective bargaining agreement. Neither the elements of intentional infliction of emotional distress nor those of assault and battery require interpretation of the contract. *See Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905, 908 (1985) (emotional distress); *Mitchell v. Daly*, 133 Mich. App. 414, 350 N.W.2d 772, 779 (1984) (assault and battery).

In these circumstances, the claims stand on independent state common-law ground, beyond the preemptive grasp of federal labor law. As a result, Counts I and II are not preempted by section 301, and the court lacks original jurisdiction over these claims. Even as courts have recognized and deferred to the power of section 301 preemption, they have underscored the importance of state claims remaining separate when their resolution does not require contractual interpretation. *Lingle*, 486 U.S. at 410, 108 S.Ct. at 1883–84; *Farmer v. United Bhd. of Carpenters and Joiners*, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977) (holding intentional infliction of emotional distress claim not preempted); *Knafel v. Pepsi–Cola Bottlers, Inc.*, 899 F.2d 1473, 1481–82 (6th Cir.1990) (holding

same); *O'Shea v. Detroit News*, 887 F.2d 683, 686 (6th Cir.1989) (holding same).

■ Despite the absence of federal preemption over the entirety of Counts I and II, defendants urge this court to find that certain alleged damages related to income are preempted on the theory that these are related to his termination, an event covered by the collective bargaining agreement.

Defendants' argument focuses upon the elements of plaintiffs' alleged damages, instead of the claim itself. This approach lacks authority, and General Motors and Schuchaskie fail to cite any controlling precedent for the result they seek. Section 301 preempts claims, not requests for relief. Briggs is not preempted as a matter of law from seeking lost wages proximately caused by tortious conduct, so long as the tort claim is not itself preempted by federal law.

The court's finding that these claims are not preempted does not, of course, adjudicate their outcome. To prevail, Briggs must show that the alleged fight with Schuchaskie and alleged abuse based on his sexual preference constituted assault and battery and intentional infliction of emotional distress under state law. In addition, in seeking damages for lost income, he will have to show proximately caused harm other than the loss of the General Motors job itself. The forum for recourse for his firing was the collective bargaining agreement's grievance process. *See Farmer*, 430 U.S. at 305, 97 S.Ct. at 1066.

This case was removed on the strength of defendants' preemption defense. I have determined that only the tortious interference claim is preempted, and that claim has been dismissed as untimely. The remain-

**2.** Even if federal preemption and the limitations period did not preclude this claim, there is reason to doubt whether Briggs's Count III could succeed under Michigan law. In this count, Briggs seeks recovery from Schuchaskie, a supervisor for General Motors. Michigan case law suggests that to recover for intentional interference with contractual relations, a plaintiff needs to show that the defendant breaching the contract was a third party to the agreement.

*Dzierwa v. Michigan Oil Co.*, 152 Mich.App. 281, 393 N.W.2d 610, 613 (1986); *Seven D. Enterprises, Ltd. v. Fonzi*, 438 F.Supp. 161, 163 (E.D.Mich. 1977). As a result, even if Count III was not time-barred, Briggs probably could not prevail because Schuchaskie, as a General Motors supervisory employee, was a party to the contract under Michigan law. *Dzierwa*, 393 N.W.2d at 613.

ing claims are not subject to a preemption defense and arise solely under state law.

Where the federal claims have been dismissed, the relevant considerations of comity, economy and federalism usually militate in favor of a remand of pendent state-law claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 353–57, 108 S.Ct. 614, 620–22, 98 L.Ed.2d 720 (1988). Therefore, I deny defendants' motions for summary judgment with respect to Counts I and II without prejudice and remand Counts I and II to Ingham County Circuit Court pursuant to 28 U.S.C. § 1441(c).

### CONCLUSION

For the reasons set forth in this opinion, the court grants summary judgment in favor of defendants on Count III because the interference with contractual relations claim is preempted by section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and time-barred under *Del-Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). The court finds further that Counts I and II are not preempted by federal labor law, and denies summary judgment on these claims without prejudice. Finally, the court remands Counts I and II to state court pursuant to 28 U.S.C. § 1441(c).