HALL v PIZZA HUT OF AMERICA, INC

Docket No. 85624. Submitted April 9, 1986, at Detroit. Decided June 5, 1986.

Kevin Hall, Jessica Hubbard, and Troy Watson entered a Pizza Hut restaurant and placed a carry-out order. Debbie Nichols, an employee of the restaurant, thought Hall, Hubbard, and Watson looked like three people who had robbed the restaurant five days earlier. Nichols asked another employee and he confirmed that the three looked like they could be the ones who had robbed the restaurant. Nichols called the Detroit Police Department and informed the police of her suspicions. Hall, Hubbard, and Watson were arrested by the Detroit police as the three were leaving the premises. They were held overnight and Hall and Watson participated in lineups the following day, after which all three were released, with no charges being filed against them. Hall, Hubbard, and Watson, by his next friend, Lillie Jenkins, filed suit against Pizza Hut of America, Inc., the City of Detroit, and the Detroit Police Department in Wayne Circuit Court alleging assault and battery, false imprisonment, malicious prosecution, intentional infliction of mental distress, invasion of privacy, negligence, violation of civil rights, and slander. Pizza Hut and the City of Detroit filed motions for summary disposition, and the court, Henry J. Szymanski, J., granted the city's motion on the basis of governmental immunity. Pizza Hut's motion was denied, the court concluding that there were disputed questions of material fact regarding the reasonableness of the behavior of the Pizza Hut employees. Pizza Hut appealed by leave granted. Held:

1. Plaintiffs' deposition testimony cannot sustain their as-

REFERENCES

Am Jur 2d, False Imprisonment §§ 20 et seq., 80 et seq.

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 1 et seq.

Am Jur 2d, Libel and Slander §§ 192 et seq.

Am Jur 2d, Privacy §§ 11 et seq.

Modern status of intentional infliction of mental distress as independent tort; "outrage". 38 ALR4th 998.

Invasion of privacy by radio and television. 56 ALR3d 386.

See also the annotations in the Index to Annotations under False Arrest and Imprisonment; Libel and Slander.

sault and battery, violation of civil rights, and malicious prosecution allegations. Those three counts should be dismissed.

2. In light of the pleadings, affidavits, depositions, and caselaw on the subject, the trial court's denial of summary disposition in favor of Pizza Hut on the false imprisonment claim was clearly erroneous.

3. The trial court's denial of summary disposition on the intentional infliction of emotional distress claim also was clearly erroneous. Plaintiffs failed to establish the requisite emotional distress.

4. Plaintiffs' false light invasion of privacy claim fails because they did not set forth facts in their pleadings showing that there is a genuine issue of invasion of privacy. They also failed to allege the publicity requisite for a false light invasion of privacy claim.

5. The essentials of a claim for slander also were not specifically pled. Furthermore, Nichols's statements to the police regarding criminal activity were privileged, either absolutely or qualifiedly, and there is no evidence that Pizza Hut's employees acted in bad faith or with malice. Summary disposition was erroneously denied on the slander count.

6. Plaintiffs' negligence count fails because Pizza Hut had no duty to protect plaintiffs from the use of excessive and unreasonable force by the police. There is also no evidence in the record that the police used excessive force.

7. The trial court clearly erred as to all eight counts of the plaintiffs' complaint. Summary disposition in favor of defendant Pizza Hut was appropriate. The trial court's decision is reversed and the case is remanded for entry of judgment of dismissal of all of plaintiffs' claims.

Reversed and remanded.

1. ARREST — FALSE ARREST.

An action for false arrest cannot be maintained where the arrest is legal even if the person arrested is in fact innocent; if the arrest is legal, there has been no false arrest; a person who has been legally arrested may bring an action for malicious prosecution, but is required to show that the defendant acted with malice.

2. ARREST — FALSE ARREST — PROBABLE CAUSE.

Issues as to probable cause in false arrest actions where the facts are susceptible of only one reasonable inference are for the court to decide.

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A showing of conduct so outrageous in character, and so extreme

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community must be made in order to recover on a claim of intentional infliction of emotional distress.

4. Pʀɪᴠᴀᴄʏ — Iɴᴠᴀsɪᴏɴ ᴏғ Pʀɪᴠᴀᴄʏ — Fᴀʟsᴇ Lɪɢʜᴛ — Tᴏʀᴛs.

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

5. Pʀɪᴠᴀᴄʏ — Iɴᴠᴀsɪᴏɴ ᴏғ Pʀɪᴠᴀᴄʏ — Fᴀʟsᴇ Lɪɢʜᴛ — Tᴏʀᴛs.

False light invasion of privacy is publicity which places a person in a false light in the public eye; an action alleging false light invasion of privacy requires allegations that the objectionable communication was broadcast to the public in general or to a large number of people.

6. Tᴏʀᴛs — Sʟᴀɴᴅᴇʀ — Pʀɪᴠɪʟᴇɢᴇᴅ Cᴏᴍᴍᴜɴɪᴄᴀᴛɪᴏɴs.

A qualified privilege extends to all communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation.

*Rader, Eisinberg & Feldman, P.C.* (by *Ronald Rader*), for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich, Michael P. Coakley,* and *Paula L. Ettelbrick*), for defendant.

Before: J. H. Gɪʟʟɪs, P.J., and Hᴏᴏᴅ and Sᴜʟʟɪᴠᴀɴ, JJ.

Pᴇʀ Cᴜʀɪᴀᴍ. Defendant Pizza Hut of America, Inc., appeals by leave granted from a circuit court order denying defendant's summary disposition motion. MCR 2.116(C)(10). We reverse.

On July 26, 1982, Detroit police officers arrested

the plaintiffs on information supplied by Pizza Hut employee Debbie Nichols who thought the plaintiffs looked like the three people who had perpetrated an armed robbery five days earlier at the restaurant where she worked. Nichols, who was working at the restaurant on the night of the robbery, said she became suspicious when plaintiff Kevin Hall would not talk to her or look at her as he placed a carry-out order. When Nichols looked over at the carry-out bench she saw the other two plaintiffs, and she thought she recognized Jessica Hubbard as one of the robbers. After taking plaintiffs' order, Nichols asked another employee, Dan Gerrity, who had also worked the night of the robbery, and he confirmed to her that plaintiffs looked like they could be the robbers. Nichols called the police, and as the plaintiffs left the premises with their pizza, they were arrested.

All three plaintiffs were held overnight by the police. Hall and Watson participated in lineups the following day. All three plaintiffs were released around noon that day and no charges were ever filed against them.

On July 19, 1983, plaintiffs filed an eight-count complaint against Pizza Hut and the City of Detroit. The complaint alleged assault and battery, false imprisonment, malicious prosecution, intentional infliction of mental distress, invasion of privacy, negligence, violation of civil rights, and slander. Both Pizza Hut and the City of Detroit filed summary disposition motions, and, at the hearing on May 3, 1985, the lower court granted the city's motion on the basis of governmental immunity. However, the court denied Pizza Hut's motion, concluding that there were "disputed questions of material fact regarding the reasonableness of the behavior of the Pizza Hut employees in this particular instance."

We granted leave to appeal to consider whether the trial court erred in denying defendant's motion for summary disposition on this basis. At the outset, we note that in both plaintiffs' appellate brief and at oral argument they conceded that their deposition testimony cannot sustain their assault and battery, violation of civil rights, and malicious prosecution counts. We agree that those three counts should be dismissed.

As to the remaining counts, plaintiffs successfully thwarted summary disposition with the argument that Debbie Nichols was negligent or malicious in identifying them as the robbers. In an affidavit, Nichols claims that Gerrity and another employee, Chuck Bradley, confirmed her suspicions that plaintiffs were the robbers; her deposition testimony, however, acknowledges that both Gerrity and Bradley declined to specifically confirm her suspicions. Furthermore, in her deposition, Nichols claims to have recognized only plaintiff Hubbard as one of the robbers, rather than all three plaintiffs. Based on these "inconsistencies," the trial court concluded that there were disputed questions of material fact regarding the reasonableness of defendant's employees' conduct.

Beginning with plaintiffs' false imprisonment claim, we note that the parties have argued the facts and legal issues of this count on the premise that the true nature of this claim is false arrest. A claim for false arrest is controlled by *Lewis v Farmer Jack Division, Inc,* 415 Mich 212, 218; 327 NW2d 893 (1982). In *Lewis,* information was provided to the police by a Farmer Jack employee who was present at the time a prior crime was committed. The Michigan Supreme Court described the tort:

A false arrest is an illegal or unjustified arrest.

On the basis of information provided by Holiday and her identification of Lewis, the police had probable cause to conclude that a felony had been committed and that Lewis had committed it. Thus, looking at the arrest from the point of view of whether the police, who made the arrest, had the legal right or justification to act as they did, the arrest was legal and justified and it was not a false arrest.[2]

---

[2] An action for false arrest cannot be maintained where the arrest is legal even if the person arrested is in fact innocent. If the arrest is legal, there has not been a false arrest. A person who has been legally arrested may bring an action for malicious prosecution, but is required to show that the defendant acted with malice.

---

In *Lewis,* the Court went on to hold that the store employees, in phoning the police and pointing out the suspect, did no more than provide information to the police which officers then acted upon:

"It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." 1 Restatement Torts, 2d, § 45A, Comment c, p 70.

See also 32 Am Jur 2d, False Imprisonment, §§ 44, 45, pp 98-104.

\* \* \*

In the instant case, Holiday communicated facts and circumstances to the officer, her perception that Lewis was the robber. The officer was left to act on his own judgment and evidently acted on his own judgment in arresting Lewis. [415 Mich 219, n 3.]

Similarly, in this case, it is undisputed that Debbie Nichols did no more than call the police

and point out the suspects. The police followed plaintiffs to the parking lot, detained, questioned and arrested them. Officer Donald Drake, one of the arresting officers, stated in his deposition that the decision to arrest the plaintiffs was made by a police officer. No Pizza Hut employee participated in the questioning or directed the arrest.

Plaintiffs' citation of the early Michigan case of *Maliniemi v Gronlund,* 92 Mich 222; 52 NW 627 (1892), which stands for the proposition that liability may attach where the defendant directs the arrest and the officer acts upon defendant's judgment, is inapposite to this case because the deposition testimony of Officer Drake was that the decision to arrest the plaintiffs was made by the police officers. Plaintiffs also contend there is a material question of fact as to whether defendant's employees made a full and fair disclosure of information to the police thus creating an issue of the legal justification for the arrest. We disagree, and hold that from the affidavits and depositions submitted there is no genuine issue present that calls into question the good faith of Debbie Nichols in contacting the police. Rather, it was a right and privilege of Nichols secured by the constitution and laws of the United States to aid in the execution of the laws of her country by giving information to the proper authorities. *Motes v United States,* 178 US 458, 462-463; 20 S Ct 993, 995; 44 L Ed 1150, 1151-1152 (1900). The Michigan Supreme Court has previously recognized in a false arrest action that where, as here, the facts are susceptible of only one reasonable inference, issues as to probable cause are for the court. *Hammitt v Straley,* 338 Mich 587, 597; 61 NW2d 641 (1953).

The trial court stated in its opinion denying defendant's motion that "the injury that the plaintiffs complained of was, indeed—if there was an

injury—was indeed at the hands of the police department." In light of *Lewis* and our review of the pleadings, affidavits and depositions and the lower court's determination that any injury to plaintiffs was caused by the police department, the trial court's denial of summary disposition on this count was clearly erroneous.

For similar reasons, the same result obtains for the plaintiffs' intentional infliction of mental distress claim. In *Holmes v Allstate Ins Co,* 119 Mich App 710, 714-715; 326 NW2d 616 (1982), lv den 417 Mich 1018 (1983), this Court delineated intentional infliction of emotional distress as a separate cause of action which is not parasitic to another cause of action as an aggravating element of damages. The Court adopted the definition found in 1 Restatement Torts, 2d § 46, comment d, p 73, which provides:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Plaintiff must plead and prove conduct "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hall v Citizens Ins Co of America,* 141 Mich App 676, 684; 368 NW2d 250 (1985), quoting *Warren v June's Mobile Home*

*Village & Sales, Inc,* 66 Mich App 386, 391; 239 NW2d 380 (1976). In the present case, there is no evidence which shows that it was defendant's intent to cause plaintiffs the requisite emotional distress. Defendant's employee did no more than file a complaint with law enforcement officials.

Moreover, plaintiffs have failed to establish the requisite emotional distress. Although plaintiff Watson stated he incurred psychological trauma by being arrested, he could not describe how the trauma manifested itself and he admitted that it never affected his normal routine and he never sought medical treatment. Plaintiff Hubbard admitted that she incurred no physical injury or psychological or emotional distress from the arrest. Plaintiff Hall stated that he experiences flashbacks especially when he sees Pizza Hut commercials on television, but he has never sought medical treatment. Thus, by the plaintiffs' own admissions, the harm alleged fails to make a threshold showing of severe emotional distress. Accordingly, we conclude that the trial court's denial of summary disposition on the intentional infliction of emotional distress claim was clearly erroneous.

Plaintiffs also allege invasion of privacy which in their appellate brief they specifically denominate as a "false light" privacy claim. 3 Restatement Torts, 2d, § 652E, p 394, offers the following definition for false light invasion of privacy claims:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized

matter and the false light in which the other would be placed.

As to this tort, this Court stated in *Reed v Ponton,* 15 Mich App 423, 426; 166 NW2d 629 (1968).

When there has been no misappropriated use of, or physical intrusion into, the private life, employment, property, name, likeness, or other personal place or interest, so that the privacy action is premised solely upon a disclosure of secret or confidential matter or upon being put *publicly* in a "false light", then if (without deciding) mere words of mouth can ever be actionable (except by a slander action) the oral communication must be broadcast to the public in general or publicized to a large number of people. [Emphasis in original.]

This Court has followed *Reed* in two recent cases and has held that complaints for invasion of privacy failed to state a cause of action where the plaintiff failed to allege that he was subjected to publicity by the communication or that it was broadcast to the public in general or publicized to a large number of. people. See *Ledl v Quick Pik Food Stores, Inc,* 133 Mich App 583, 592; 349 NW2d 529 (1984), and *Sawabini v Desenberg,* 143 Mich App 373, 381; 372 NW2d 559 (1985). In the instant case, plaintiffs' invasion of privacy count suffers from a similar deficiency because Nichols's communication was limited solely to a telephone call to the police and the act of pointing out the plaintiffs once the police arrived. As previously noted, such a communication was a right and privilege secured by the constitution. *Motes, supra.*

Moreover, the pleadings and depositions in this case are devoid of any evidence that defendant's employees acted with reckless disregard as to the

falsity of the publicized matter. When defendant submitted Debbie Nichols's affidavit which stated her good faith and honest belief that she thought plaintiffs were the people who committed the robbery, plaintiffs merely responded in a conclusory manner that they questioned her good faith. They failed to offer any testimony, affidavit, or other documentary evidence to rebut defendant's summary disposition motion and to raise a real issue as to Nichols's good faith. Under MCR 2.116(G)(4), plaintiffs may not rest upon the mere allegations or denials in their pleading, but must instead set forth specific facts showing that there is a genuine issue for trial. Because we find that plaintiffs have failed to do so and because their complaint also fails to allege the requisite publicity, their false light invasion of privacy claim must fail.

The plaintiffs' claims of slander fail for similar reasons. Not only were the essentials of this count not specifically pled as required in *Ledl, supra,* but more importantly, information given to police officers regarding criminal activity is absolutely privileged. *Shinglemeyer v Wright,* 124 Mich 230, 239-240; 82 NW 887 (1900). Even if Nichols's statements were not absolutely privileged, a qualified privilege extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation. *Timmis v Bennett,* 352 Mich 355, 366; 89 NW2d 748 (1958). The initial determination of whether a privilege exists is one of law for the court. *Lawrence v Fox,* 357 Mich 134, 139-140; 97 NW2d 719 (1959). In the case at bar, it is clear that Debbie Nichols's com-

munication to the police enjoyed at least a qualified privilege.

Having decided that at least a qualified privilege protected Nichols's statements, the next question is whether a material issue of fact existed as to whether she made the statement with actual malice. *Parks v Johnson,* 84 Mich App 162, 169; 269 NW2d 514 (1978), lv den 405 Mich 820 (1979). A general allegation of "malice" is insufficient to establish the required showing. As discussed previously, there is absolutely no showing that Debbie Nichols acted with anything but good faith intentions. Absent any showing of bad faith on the part of defendant's employees, summary disposition was erroneously denied with respect to plaintiffs' slander count.

Finally, the plaintiffs' negligence count must fail based on their own allegations. Plaintiffs allege that defendant had a duty to refrain from using excessive force and violence upon them as well as a duty to protect them from the police who were using excessive and unreasonable force upon the plaintiffs. However, there is not one shred of support in the record for plaintiffs' allegations of excessive force. The admitted facts show that defendant's employees did nothing more than call the police. Moreover, the record does not support the claim of excessive force by the police officers and, even if it did, any injury is at the hands of the police, not the defendant.

Further, plaintiffs have failed to direct this Court to any authority which on the facts in evidence leads us to conclude that such a relationship exists between the parties that would impose a duty upon the defendant. In other words, the alleged invasion of plaintiffs' interests was not as a matter of law entitled to legal protection at the

hands of the defendant. To the contrary, defendant's employees' behavior was entirely reasonable under the circumstances. We find that it was clear error to deny summary disposition on the negligence claim.

For the reasons stated, the lower court clearly erred as to all eight counts of the plaintiffs' complaint. Summary disposition in favor of defendant Pizza Hut was appropriate under MCR 2.116(C)(10). The trial court's decision is reversed and the case is remanded for entry of judgment of dismissal of all of plaintiffs' claims.

Reversed and remanded.